USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/31/09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
MR. WATER HEATER ENTERPRISES, INC.   :
et ano.,

                              :     08 Civ. 10959 (WHP)
            Plaintiffs,

                              :     MEMORANDUM & ORDER
      -against-

                              :

1-800-HOT WATER HEATER, LLC et ano.,  

                              :
           Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

WILLIAM H. PAULEY III, District Judge:

           Mr. Water Heater Enterprises, Inc. and MRW National, Inc. ("Plaintiffs") bring

this trademark infringement action against 1-800-Hot Water Heater, LLC, and Mr. Hot Water

Heater, Inc. ("Defendants"). Plaintiffs allege Lanham Act claims for trademark infringement

pursuant to 15 U.S.C. § 1114(1) and false designation of origin pursuant to 15 U.S.C. § 1125(a),

and state law claims for trademark infringement and unfair competition, deceptive acts and

practices and unjust enrichment. Plaintiffs move for summary judgment as to liability on their

Lanham Act claims. Defendants move for summary judgment dismissing all of Plaintiffs'

claims[1] and on the issue of damages. For the following reasons, Plaintiffs' motion is denied and

Defendants' motion is granted in part and denied in part.

---

[1] While Defendants purport to move to dismiss all of Plaintiffs' claims, their motion papers do
not even mention, let alone address, Plaintiffs' unjust enrichment claim. Accordingly, this Court
declines to consider that branch of their motion.

## BACKGROUND

The parties' joint Rule 56.1 statement is a bare bones thirty-three paragraph summary of certain agreed facts that are not cited in their memoranda. Instead, Plaintiffs rely on the underlying affidavits and exhibits and invite the Court to troll through the record. As the Fifth Circuit cautioned, "practical constraints on the time of a judge make it impossible for the judge to examine a record of even moderate size with such finitude as to be both exhaustive and exhausting. Judges are not ferrets!" Nicholas Acoustics & Specialty Co. v. H&M Constr. Co., 695 F.2d 839, 846-47 (5th Cir. 1983). While a court is not required to look beyond a Rule 56.1 statement to resolve a summary judgment motion, this Court waded into the underlying papers to determine if the parties presented enough to warrant summary judgment.

Plaintiffs have been selling, installing, and servicing water heaters under the mark "Mr. Waterheater" since 1981 (the "Waterheater Mark"). (Joint Rule 56.1 Statement of Undisputed Facts dated Apr. 16, 2009 ("56.1 Stmt.") ¶ 1.) Plaintiffs registered the Waterheater Mark as U.S. Trademark Registration No. 1,218,299 for "gas and electric waterheaters for residential and commercial use." (56.1 Stmt. ¶ 2.) That trademark registration was filed on May 26, 1981, issued on November 30, 1982, and became incontestable on May 23, 1988. Over the past 10 years, Plaintiffs have spent approximately $1.3 million advertising the Waterheater Mark. (Declaration of John D. Sembower dated Dec. 19, 2008 ("Sembower Decl.") ¶ 7.) The company generates approximately $2.7 million annually through sales, installations and repairs of water heaters. (Sembower Decl. ¶ 11.)

Defendants began using the mark "Mr. Hot Water Heater" in connection with their plumbing services business in 1986. (56.1 Stmt. ¶ 3.) In 2002, after a change in ownership,

-2-

Defendants started using the monikers "Mr. Water Heater" and "Mr. Hot Water Heater" interchangeably.  (56.1 Stmt. ¶ 4.)  Defendants' website states that Defendants are the "Home of the Original Mr. Hot Water Heater!"  (56.1 Stmt. ¶ 6.)

    The United States Patent and Trademark Office ("USPTO") rejected Defendants' federal trademark applications three times.  (56.1 Stmt ¶¶ 8-9, 11-14.)  In 1986, Defendants sought to register the mark "Mr. Hot Water Heater" for "plumbing supply equipment," but abandoned that application in 1987.  (Declaration of Mord Michael Lewis dated Apr. 16, 2009 ("Lewis Decl.") ¶ 12, Ex. 9: Search results for trademark registration application No. 73636881 dated Mar. 20, 2009.)  The USPTO apparently lost its records relating to this first application. On October 29, 2007, Defendants tried again for a trademark.  This time, they attempted to register the mark "Mr. Water Heater" for "hot water heaters" (the "2007 Application").  (Lewis Decl. ¶ 13, Ex. 10: Response to trademark application No. 77315572 dated Feb. 9, 2008 ("USPTO Response to 2007 Application").)  The USPTO refused that registration "because the [Defendants'] mark, when used on or in connection with the identified goods, so resembles the [Waterheater Mark] as to be likely to cause confusion, or to cause mistake, or to deceive." (USPTO Response to 2007 Application at 2.)  Finally, on March 26, 2008, Defendants attempted to register the mark "Mr. Hot Water 1 (800) 468-9283" for "plumbing services" (the "2008 Application").  (Lewis Decl. ¶ 14, Ex. 11: Response to trademark application No. 77431688 dated July 9, 2008 ("USPTO Response to 2008 Application").)  In refusing the 2008 Application, the USPTO stated that "[t]he applicant's services and the goods and services of the [Plaintiffs], are highly related plumbing and water heater goods and services which move in the same channels of trade."  (USPTO Response to 2008 Application at 4.)

Plaintiffs present a single screen shot of their web page, depicting the context in which the Waterheater Mark is displayed to consumers. The Waterheater Mark consists of the word "Mr.Waterheater," slanted slightly upwards in a red typeface with a black shadow. Underneath the text "Mr.Waterheater" is the phrase "Keeping water HOT!" in black lettering. The text runs into an animated water heater character with two eyes, a nose, a smiling mouth, stick-like arms bent at its waist, and two feet. A circular yellow shaped object appearing to resemble the sun provides a background for the animated character.

In contrast, screen shots of Defendants' web page show an image in blue text reading "Home of the Original Mr. Hot Water Heater!" appearing over an animated water heater character. Defendants' animated character has two eyes, a nose, and a red tongue sticking out of its mouth, along with two muscular arms, one flexing and the other holding a lunch box. A bubble shaped text box reads "24 Hour 7 Day Service." Another image depicts the same animated character against a red, yellow, and black horizontally striped background. To the left of the animated character, the words "Mr. Hot Water Heater" appear in white bubble-like lettering with a black shadow. A text box on the opposite side reads "Most Installations Within 2 Hours!" Additional text provides "Emergency Services," "24 Hours 7 Days," and the toll free number "1-800-Hot-Water."

Plaintiffs purchase water heaters from manufacturers and plumbing suppliers for resale and installation. (56.1 Stmt. ¶ 15.) Plaintiffs' water heaters bear both the Waterheater Mark and the manufacturer's mark. (56.1 Stmt. ¶¶ 15-16.) Defendants purchase their water heaters from plumbing supply stores and install them for customers. After installation, Defendants place their mark on the water heaters. (56.1 Stmt. ¶¶ 18-19.) Defendants issue a

-4-

single invoice bearing Defendants' mark, which includes the price of the water heater and installation.  (56.1 Stmt. ¶ 20.)  Defendants also offer extended warranties on water heaters they install and include their mark on the warranty card.  (56.1 Stmt. ¶ 21.)  While consumers occasionally purchase water heaters from plumbing supply stores, that is more the exception than the rule.  (Deposition of William Sherman dated Mar. 10, 2009 ("Sherman Dep.") at 51-52.)

In 2007, Plaintiffs launched a nationwide franchising campaign for the Waterheater Mark and entered into franchising agreements covering parts of Connecticut and Oregon in 2008.  (56.1 Stmt. ¶¶ 23-24.)  Plaintiffs also negotiated with Alfonse Strada ("Strada") for a franchise agreement in New Jersey.  (56.1 Stmt. ¶ 25.)  Those negotiations were interrupted after Strada saw trucks with the mark "Mr. Hot Water Heater" or "Mr. Water Heater" painted on them, and inquired of Plaintiffs.  (56.1 Stmt. ¶ 26.)  Strada remains interested in a franchise, but only if Defendants are not permitted to use the "Mr. Hot Water Heater" mark in New Jersey.  (56.1 Stmt. ¶¶ 26-27.)

While Defendants operate primarily in New Jersey, southern New York, and eastern Pennsylvania, their website advertises plumbing services throughout the United States using the "Mr. Hot Water Heater" mark.  (56.1 Stmt. ¶¶ 30-31.)  Those services are provided by businesses that license the phone number "1-800-Hot-Water" from Defendants but do not refer to Defendants' business on their own web site.  (Sherman Dep. at 57-58, 67.)

## DISCUSSION

### I.  Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Davis v. Blige, 505 F.3d 90, 97 (2d Cir. 2007).  The burden of demonstrating the absence of any genuine dispute as to a material fact rests with the moving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).  In determining whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." Liberty Lobby, 477 U.S. at 255; Jeffreys v. City of N.Y., 426 F.3d 549, 553 (2d Cir. 2005).  "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (quoting Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)).

### II.  Liability Under Sections 1114 & 1125

Plaintiffs assert claims for trademark infringement and false designation of origin under 15 U.S.C. §§ 1114 and 1125(a), respectively.  The same test applies to both claims, see Louis Vuitton Malletier v. Dooney & Bourke, Inc., 454 F.3d 108, 115 (2d Cir. 2006), and "looks first to whether the plaintiff's mark is entitled to protection, and second to whether defendant's use of the mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods," Virgin Enters. Ltd. v. Nawab, 335 F.3d 141, 146 (2d Cir. 2003).

-6-

A. Protectability of the Mark

The Waterheater Mark is entitled to protection as a registered, incontestable trademark. See Gruner + Jahr USA Publ'g v. Meredith Corp., 991 F.2d 1072, 1077 (2d Cir. 1993) (incontestable mark entitled to protection); Savin Corp. v. Savin Group, 391 F.3d 439, 456 (2d Cir. 2004) (same). Relying on Mushroom Makers, Inc. v. R.G. Barry Corp., 580 F.2d 44, 48 (2d Cir. 1978), Defendants argue that the Waterheater Mark's protection only extends to goods—the sale of water heaters—not services—their installation and repair.

The two-part test for trademark infringement begins with "whether plaintiff's mark merits protection, before proceeding to the second step, the likelihood of confusion." Gruner + Jahr, 991 F.2d at 1075. In addressing the likelihood of confusion prong, the Court must consider those factors set forth in Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492, 495 (2d Cir. 1961). The registration certificate is just one indicia. See Gruner + Jahr, 991 F.2d at 1078 ("[T]he strength of a descriptive mark made incontestably distinctive for protectability purposes by registration for more than five years is a matter also properly considered by a trial court on the issue of likelihood of confusion."). It would be a needless exercise to analyze factors such as "the competitive proximity of the [parties'] products or the likelihood that plaintiff will 'bridge the gap' and offer a product like defendant's," Gruner + Jahr, 991 F.2d at 1077, if Defendants could use Plaintiffs' mark to sell related products or services. Indeed, the Polaroid test addresses "how far a valid trademark shall be protected with respect to goods other than those to which its owner has applied it." Polaroid, 287 F.2d at 495; see also Avon Shoe Co. v. David Crystal, Inc., 279 F.2d 607, 613 (2d Cir. 1960) ("we have consistently held that a senior user possesses but two legitimate interests which may properly call for injunctive relief against a

-7-

use by a junior user on related goods, namely, that he may at some future date desire to expand his business into the related field in which the junior user is operating"). Thus, whether Plaintiffs' trademark certificate for goods is infringed by Defendants' sale of services is appropriately considered under the "likelihood of confusion" prong. See Sports Auth., Inc. v. Prime Hospitality Corp., 89 F.3d 955, 961 n.1 (2d Cir. 1996) ("The strength of the [Plaintiff's] mark is also relevant to the separate inquiry of whether the mark is sufficiently strong to be protected at all under the Lanham Act." (emphasis added)).

Anchoring the analysis to the likelihood of confusion prong is consistent with Mushroom Makers. There, Plaintiff sought a declaratory judgment that its use of a trademark in connection with the promotion and sale of women's jeans, jackets, skirts and overalls did not constitute infringement of Defendant's registered trademark identifying a line of casual shoes, sandals, and slippers. Mushroom Makers, 580 F.2d at 46. The Second Circuit's analysis focused on the likelihood of confusion. Mushroom Makers, 580 F.2d at 47. Moreover, as a registered, incontestable mark, this Court "need not tarry with the first prong of the infringement test." Savin, 391 F.3d at 456.

B. Likelihood of Confusion

In assessing the likelihood of confusion, this Court considers the following factors: (1) the strength of the plaintiff's mark; (2) the similarity of plaintiff's and defendant's marks; (3) the competitive proximity of the products; (4) the likelihood that plaintiff will "bridge the gap" and offer a product like defendant's; (5) actual confusion between products; (6) defendant's bad faith; (7) the quality of defendant's product; and (8) the sophistication of buyers. Polaroid, 287 F.2d at 495. No single factor is dispositive, Brennan's, Inc. v. Brennan's

-8-

Restaurant, L.L.C., 360 F.3d 125, 130 (2d Cir. 2004), and "each factor must be evaluated in the context of how it bears on the ultimate question of likelihood of confusion as to the source of the product," Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 799 F.2d 867, 872 (2d Cir. 1986). However, the first three factors—strength, similarity, and proximity—are "perhaps the most significant in determining the likelihood of confusion." Mobil Oil Corp. v. Pegasus Petroleum Corp., 818 F.2d 254, 258 (2d Cir. 1987). "If a factual inference must be drawn to arrive at a particular finding on a Polaroid factor, and if a reasonable trier of fact could reach a different conclusion, the district court may not properly resolve that issue on summary judgment." Cadbury Beverages, Inc. v. Cott Corp., 73 F.3d 474, 478 (2d Cir. 1996). "Summary judgment is appropriate where the undisputed evidence would lead only to one conclusion as to whether confusion is likely." GMA Accessories, Inc. v. Croscill, Inc., No. 06 Civ. 6236 (GEL), 2008 WL 591803, at * 3 (S.D.N.Y. Mar. 3, 2008) (internal quotation marks omitted).

1. Strength of the Mark

"[T]he strength of a mark depends ultimately on its distinctiveness, or its origin-indicating quality in the eyes of the purchasing public." Savin, 391 F.3d at 457 (alterations in original) (quotation marks omitted). The Court looks at the mark's "tendency to identify the goods [or services] sold under the mark as emanating from a particular, although possibly anonymous, source." Sports Auth., 89 F.3d at 960-61 (alterations in original) (internal quotation marks omitted). While "an incontestable registered trademark enjoys a conclusive presumption of distinctiveness," Savin, 391 F.3d at 457, "incontestability does not relieve the trademark owner from the requirement of proving likelihood of confusion," Gruner + Jahr, 991 F.2d at 1078.

"There are two components of a mark's strength: its inherent distinctiveness and the distinctiveness it has acquired in the marketplace." Brennan's, 360 F.3d at 130-31. Inherent distinctiveness reflects "not only eligibility to trademark status but also the degree of protection accorded." TCPIP Holding Co., Inc. v. Haar Commc'ns, Inc., 244 F.3d 88, 93 (2d Cir. 2001) (internal quotation marks omitted). The degree of protection is determined by classifying the mark in one of four categories: (1) generic; (2) descriptive; (3) suggestive; or (4) arbitrary or fanciful. TCPIP, 244 F.3d at 93. "A generic term is a common name, like automobile or aspirin, that describes a kind of product." Guner + Jahr, 991 F.2d at 1075. A descriptive mark is "one that tells something about a product, its qualities, ingredients or characteristics." Gruner + Jahr, 991 F.2d at 1076. The classification of a mark is a factual question. Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc., 192 F.3d 337, 344 (2d Cir. 1999). "The factual issue presented is how the purchasing public views the mark." Lane, 192 F.3d at 344. When determining whether a descriptive mark is strong, the Court looks to secondary meaning that the mark has acquired. Sports Auth., 89 F.3d at 961. A descriptive mark may attain secondary meaning through trademark registration. Gruner + Jahr, 991 F.2d at 1077. However, "independent indicia of strength is relevant to deciding whether the strength of the mark weighs in favor or against a finding of likelihood of confusion . . . ." Sports Auth., 89 F.3d at 961. The Court looks to such factors as the length of the Defendants' exclusive use of the mark, evidence of advertising expenditures, consumer studies linking the mark to a source, unsolicited media coverage of the product, sales success, and attempts to plagiarize the mark. Advance Magazine Publishers, Inc. v. Norris, --- F. Supp. 2d ---, 2008 WL 5336468, at *7 (S.D.N.Y. Dec. 15, 2008).

-10-

At best, the Waterheater Mark describes the nature of Plaintiffs' business and is therefore a descriptive mark. However, it is also a generic term that merely describes a kind of product. As an incontestable registered trademark, the Waterheater Mark is presumptively strong for the narrow category of gas and electric waterheaters. In addition, this is not a case in which Plaintiffs attempt to extend that presumption outside the goods or services noted in the registration certificate. Cf. Paco Sport, Ltd. v. Paco Rabanne Parfums, 86 F. Supp. 2d 305, 312 (S.D.N.Y. 2000) (registration for fragrances does not create presumption that the trademark is distinctive when used on clothing); Savin, 391 F.3d at 457 (registration for photocopiers not entitled to presumption for professional engineering). Finally, because the Waterheater Mark is not limited to words contained in a logo, a trier of fact could reasonably conclude that Plaintiffs' incontestable word mark is inherently strong. See Sports Auth., 89 F.3d at 961. Thus, with respect to inherent distinctiveness, the Waterheater Mark exhibits some strength.

However, the Waterheater Mark lacks acquired distinctiveness. While the Waterheater Mark has attained secondary meaning through its incontestable status, Plaintiffs present virtually no evidence as to its acquired strength in the relevant market. Plaintiffs point to $1.3 million they expended in advertising and promotion over the last 10 years and $2.7 million in annual sales. But, they offer no evidence of advertising expenditures, consumer studies, unsolicited media coverage, sales, or attempts to plagiarize the Waterheater Mark in Defendants' market—where potential confusion might be the issue. See Brennan's, 360 F.3d at 132; see also Lane Capital, 192 F.3d at 345 ("[T]he relevant purchasing public is not the population at large, but prospective purchasers of the product."). Nor do they present any evidence as to what portion of their advertising expenditure relates directly to the Waterheater Mark. See Artisan

-11-

Mfg. Corp v. All Granite & Marble Corp., 559 F. Supp. 2d 442, 450 (S.D.N.Y. 2008). In addition, Defendants began using a similar mark, "Mr. Hot Water Heater" only five years after Plaintiffs first employed the Waterheater Mark. Thus, Plaintiffs' exclusive use of the Waterheater Mark was of short duration. While Plaintiffs rely on the incontestable status of the Waterheater Mark, it is a relatively weak mark when examined against the likelihood of confusion in the relevant market. Accordingly, the strength of the mark weighs against a finding of likelihood of confusion.

### 2. Similarity of the Marks

"To apply [the degree of similarity factor], courts must analyze the marks' overall impression on a consumer, considering the context in which the marks are displayed and the totality of factors that could cause confusion among prospective purchasers." Malletier v. Burlington Coat Factory Warehouse Corp., 426 F.3d 532, 537 (2d Cir. 2005). With respect to word marks, "courts begin by examining their text, typeface, and general appearance." GMA Accessories, 2008 WL 591803, at *5. "Each mark must be compared in its entirety; juxtaposing fragments of each mark does not demonstrate whether the marks as a whole are confusingly similar." Advance Magazine Publishers, 2008 WL 5336468, at * 9. "[E]ven close similarity between two marks is not dispositve of the issue of likelihood of confusion." Savin, 391 F.3d at 458 (alterations in original) (internal quotation marks omitted). "In order to compare the contexts in which the marks appear[], the Court looks to the materials provided by the parties." Advance Magazine Publishers, 2008 WL 5336468, at * 9.

There are a number of differences between the parties' marks. First, neither the color, typeface, nor text are the same. Plaintiffs' mark appears in red, slightly slanted text that

-12-

horizontally reads "Mr.Waterheater." Defendants' mark appears in bubble-shaped white text that vertically reads "Mr. Hot Water Heater." There is additional text underneath the Waterheater Mark—"Keeping water HOT!"—which does not appear on the Defendants' mark. Second, the parties' animated water heater characters are different. Plaintiffs' character has skinny arms bent at its waist, and is standing in front of a large yellow sun. Defendants' character has a red tongue and exaggerated muscular arms, one of which is flexing while the other holds a lunch box. In addition, a text box accompanies Defendants' character in each of the images. Finally, the parties use different colors, typefaces, and messaging. Their differences suggest factual questions concerning to what extent consumers may view the parties' marks as confusingly similar. See GMA Accessories, 2008 WL 591803, at * 6.

### 3. Proximity of Products

This factor addresses "whether and to what extent the two products compete with each other." Cadbury Beverages, 73 F.3d at 480. "Courts consider the nature of the products themselves and the structure of the relevant market." GMA Accessories, 2008 WL 591803, at *6 (internal quotation marks omitted). However, the "concern with product proximity relates to the likelihood that customers may be confused as to the source of the products, rather than as to the products themselves." Arrow Fastener Co., Inc. v. Stanley Works, 59 F.3d 384, 396 (2d Cir. 1995) (internal quotation marks omitted). Therefore, consideration of competitive proximity incorporates the strength of the plaintiff's mark and similarity between the two marks. See Arrow Fastener, 59 F.3d at 396; 24 Hour Fitness USA, Inc. v. 24/7 Tribeca Fitness, LLC, 447 F. Supp. 2d 266, 276 (S.D.N.Y. 2006). Finally, courts must look at both market proximity— whether the two products are in related areas of commerce—and geographic proximity—whether

-13-

the two products are geographically separated. Advance Magazine Publishers, 2008 WL
5336468, at *10; Brennan's, 360 F.3d at 134.

The parties present little evidence as to the "structure of the market[,] . . . the class
of customers to whom the goods are sold, the manner in which the products are advertised, [or]
the channels through which the goods are sold." Cadbury Beverages, 73 F.3d at 480. Plaintiffs
simply assert that they purchase water heaters from third parties, install them for their customers,
and that they bear both the manufacturer's mark and the Waterheater Mark.[2] Plaintiffs make the
broad assertion that they specialize in the sale, installation, and repair of water heaters. While
their customers include contractors and plumbing suppliers, they maintain that their "ultimate
consumer" is the "general public." But they offer no evidence as to who Plaintiffs' customers
are or the context in which purchasing decisions are made. Instead, Plaintiffs offer the
conclusory assertion that the parties move in the same channels of commerce and operate in
precisely the same manner. Yet Defendants maintain that some of their customers purchase
water heaters directly from plumbing suppliers.

The parties' motion papers suggest several significant differences in the operation
of their businesses. First, Plaintiffs began offering franchises in 2005. The existence of
franchisees could impact consumer views concerning the source of the parties' products.
Moreover, Defendants' business outside of the New York metro area involves only licensing the
phone number "1-800-Hot-Water." As Plaintiffs acknowledge, some of Defendant's licensees

_____

[2] As discussed earlier, while the full record contains some limited evidence concerning the
manner in which the parties conduct business, "a court is not required to consider what the
parties fail to point out in their Local Rule 56.1 statements." Holtz v. Rockefeller & Co., 258
F.3d 62, 73 (2d Cir. 2001) (internal quotation marks omitted).

do not even refer to Defendants' business on their web sites. Thus, there are factual questions regarding the degree of competition between the parties in those markets. Finally, Defendants offer extended warranties on their water heaters and include their mark on the warranty card. Plaintiffs do not suggest that they offer similar warranties—raising a question about any continuing relationship with the consumer after installation. Without additional evidence, this Court cannot conclude whether it is probable that consumers are likely to be confused about the source of the parties' products. See Brennan's, 360 F.3d at 134 ("To succeed on an infringement claim, plaintiff must show that it is probable, not just possible, that consumers will be confused."). This is especially true given the Waterheater Mark's lack of strength and the dissimilarities between the parties' marks.

There is also a lack of geographic proximity between the products. Since 1981, Plaintiffs' primary market has been limited to Pennsylvania, Ohio and West Virginia. While Plaintiffs' 2007 franchising campaign extended their business to Oregon and Connecticut, they offer only one example where the parties' businesses collided. That incident, involving a prospective franchisee who came across Defendants' trucks in the New York/New Jersey area, fails to demonstrate that potential customers are likely to be confused. That it involved a potential franchisee rather than a customer underscores a difference between the parties' businesses. In sum, whether the parties operate in different channels of commerce is a question of fact.

### 4. Bridging the Gap

This factor looks to either the likelihood that Plaintiffs will enter Defendants' business or the average customer's perception of the likelihood that Plaintiffs would enter the

-15-

Defendants' market. Sports Auth., 89 F.3d at 963. "This factor is designed to protect the senior user's interest in being able to enter a related field at some future time." Savin, 391 F.3d at 469-460 (internal quotation marks omitted).

Plaintiffs point to their negotiations with a prospective franchisee in northern New Jersey as evidence of their plans to enter Defendants' market. Because the parties failed to present sufficient evidence regarding their respective business models, the Court cannot find that Plaintiffs are likely to enter Defendants' business. Accordingly, this factor only slightly favors Plaintiffs.

### 5. Actual Confusion

While "actual confusion need not be shown to prevail under the Lanham Act," Lois Sportswear, 799 F.2d at 875, a single "anecdote[] of confusion over the entire course of competition constitute[s] de minimis evidence insufficient to raise triable issues," Nora Beverages, Inc. v. Perrier Group of Am., Inc., 269 F.3d 114, 124 (2d Cir. 2001). In addition, "[i]nquiries about the relationship between an owner of a mark and an alleged infringer do not amount to actual confusion. Indeed, such inquiries are arguably premised upon a lack of confusion between the products such as to inspire the inquiry itself." Nora Beverages, 269 F.3d at 124. Strada's inquiry regarding Defendants' trucks constitutes de minimis evidence of actual confusion. In fact, it could be argued that the inquiry reveals a lack of confusion. Accordingly, this factor weighs in favor of Defendants.

### 6. Bad Faith

This factor "considers whether the defendant adopted its mark with the intention of capitalizing on plaintiff's reputation and good-will and [on] any confusion between his and the

-16-

senior user's product." Savin, 391 F.3d at 460 (alterations in original). "[F]ailure to perform an official trademark search, . . . does not[,] standing alone[,] prove that [Defendants] acted in bad faith." Savin, 159 F.3d at 460 (alterations in original) (internal quotation marks omitted). "Nor is prior knowledge of a senior user's trade mark inconsistent with good faith." Savin, 159 F.3d at 460 (alterations and internal quotation marks omitted). In addition, a finding that a party acted in bad faith does not bear directly on whether consumers are likely to be confused. Virgin, 335 F.3d at 151.

While Defendants' failure to conduct a trademark search when they purchased the business in 2002 does not alone amount to bad faith, thereafter they were rejected at least twice for federal trademark registrations. Nevertheless, they persisted in declaring themselves to be the "Home of the Original Mr. Hot Water Heater!" and offer no credible explanation for that claim. See Artisan, 559 F. Supp. 2d at 452 (inference of bad faith bolstered if defendant offers no credible explanation for its adoption of plaintiff's mark). Accordingly, whether Defendants acted in bad faith is a jury question.

### 7. Quality of Defendant's Product

Plaintiffs do not present any evidence with respect to the quality of Defendants' services. Accordingly, this factor weighs in favor of Defendants. See GMA Accessories, 2008 WL 591803, at *9.

### 8. Sophistication of Buyers

Neither party offered any direct evidence of consumer sophistication, "such as expert opinions or surveys." Star Indus., 412 F.3d at 390. Accordingly, this is another question for trial. See GMA Accessories, 2008 WL 591803, at *9.

-17-

In sum, three of these factors—strength of the mark, actual confusion, and quality of Defendants' products—favor Defendants as a matter of law. One factor—bridging the gap—slightly favors Plaintiffs. With respect to the remaining four factors—including two that are the "most significant," Mobil Oil Corp., 818 F.2d at 258, similarity of the marks and proximity of products—genuine issues of fact preclude the Court from determining whether a likelihood of confusion exists. Accordingly, the parties' motions for summary judgment on Plaintiffs' Lanham Act claims are denied.

## II. State Law Claims

### A. Trademark Infringement

"To prevail on its common law claim of trademark infringement, [plaintiff] need only present evidence sufficient to establish a violation of section 32(1) of the Lanham Act." Philip Morris USA Inc. v. Felizardo, No. 03 Civ. 5891 (HB), 2004 WL 1375277, at *6 (S.D.N.Y. June 18, 2004). Because questions of fact preclude summary judgment on Plaintiffs' Lanham Act trademark infringement claim, Defendants' motion for summary judgment with respect to the common law trademark infringement claim is denied.

### B. Unfair Competition

While unfair competition claims under common law are governed largely by the same standard as their Lanham Act counterparts, they require a showing of bad faith or intent. See Genesee Brewing Co., Inc. v. Stroh Brewing Co., 124 F.3d 137, 149 (2d Cir. 1997). As previously discussed, Defendants' alleged bad faith is a matter for the jury. See also Philip Morris, 2004 WL 1375277, at *6 (citing Centaur Commc'ns, 830 F.2d at 1227 ("[A]wareness

-18-

[that a mark is in use] can give rise to an inference of bad faith.")).  Accordingly, Defendants'

motion for summary judgment with respect to its common law unfair competition claim is

denied.

### C. Deceptive Acts and Practices

Plaintiffs also assert deceptive acts and practices in violation of New York

General Business Law Section 349.  To state a claim under this section, Plaintiff must show that

Defendants' actions would materially mislead a reasonable consumer, and that Plaintiff was

injured as a result of Defendants' acts.  See S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.,

84 F.3d 629, 636 (2d Cir. 1996); Galerie Furstenberg v. Coffaro, 697 F. Supp. 1282, 1291

(S.D.N.Y. 1988).  "[C]orporate competitors . . . have standing to bring a claim under [section

349] so long as some harm to the public at large is at issue."  Securitron Magnalock Corp. v.

Schnabolk, 65 F.3d 256, 264 (2d Cir. 1995) (internal quotation marks omitted).  "The critical

question . . . is whether the matter affects the public interest in New York . . . ."  Securitron

Magnalock Corp., 65 F.3d at 264.  Plaintiffs have presented no evidence concerning harm to the

public at large.  Accordingly, Defendants' motion for summary judgment is granted with respect

to Plaintiffs' state deceptive acts and practices claim.


### III. Damages

Defendants also move for summary judgment claiming that even if Plaintiffs

could establish liability, they would not be entitled to damages.  "In order to recover an

accounting of an infringer's profits, a plaintiff must prove that the infringer acted in bad faith."

Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger, U.S.A., Inc., 80 F.3d 749, 753 (2d Cir.

1996). "[I]n order for a Lanham Act plaintiff to receive an award of damages the plaintiff must prove either actual consumer confusion or deception resulting from the violation, or that the defendant's actions were intentionally deceptive . . . ." Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co., 145 F.3d 481, 493 (2d Cir. 1998) (emphasis omitted).

Judges in the Southern District of New York are split over whether the Trademark Amendments Act of 1999 (the "1999 Amendments") eviscerated the Second Circuit's willfulness requirement. Compare Nike, Inc. v. Top Brand Co. Ltd., No. Civ. 8179 (KMW)(RLE), 2005 WL 1654859 (S.D.N.Y. July 13, 2005) (willfulness requirement did not survive the 1999 Amendments); Cartier v. Aaron Faber Inc., 512 F. Supp. 2d 165 (S.D.N.Y. 2007) (same); with Life Services Supplements, Inc. v. Natural Organics, Inc., No. 03 Civ. 6030 (SHS), 2007 WL 4437168 (S.D.N.Y. Dec. 17, 2007) (profits cannot be awarded in false designation of origin suits unless willful deception is established); Malletier v. Dooney & Bourke, Inc., 500 F. Supp. 2d 276 (S.D.N.Y. 2007) (same); Mastercard Int'l Inc. v. First Nat'l Bank of Omaha, Inc., No. 02 Civ. 3691 (DLC), 2004 WL 326708 (S.D.N.Y. Feb. 23, 2004) (in order to recover profits or damages, plaintiff must prove bad faith, actual consumer confusion or deception). This Court agrees with those authorities holding that willful deception or bad faith continues to be a prerequisite to an award of profits or damages pursuant to 15 U.S.C. § 1117(a) until the Second Circuit instructs otherwise.

"The court in exceptional cases may award reasonable attorney's fees to the prevailing party." 15 U.S.C. § 1117(a). "Exceptional cases are those where acts of infringement can be characterized as malicious, fraudulent, deliberate, or willful." Weight Watchers, 744 F. Supp. at 1289 (quotation marks omitted). "This Court may grant attorney's fees under the

Lanham Act only on evidence of fraud or bad faith." Warner Bros. Entmt. Inc. v. Ideal World Direct, No. 06 Civ. 4174 (WHP), 2007 WL 3376901, at *1 (citing Conopco, Inc. v. Campbell Soup Co., 95 F.3d 187, 194 (2d Cir. 1996)). "In determining whether a defendant's infringing . . . conduct was carried out in bad faith, courts can rely on the considerable jurisprudence that has been developed applying the 'good faith' prong of the Polaroid test." N.Y. State Soc. Of Certified Public Accountants v. Eric Louis Assocs., Inc., 79 F. Supp. 2d 331, 348 (S.D.N.Y. 1999).

While Plaintiffs fail to show actual confusion, a question of fact exists as to whether Defendants acted in bad faith. Defendants were rejected at least twice for federal trademark registrations but continue to claim that they are the "Home of the Original Mr. Hot Water Heater!" Accordingly, Defendants' motion for summary judgment with respect to damages, accounting of profits and attorney's fees is denied.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment as to liability on their Lanham Act claims is denied. Defendants' motion for summary judgment dismissing Plaintiffs' state deceptive acts and practices claim is granted and the other branches of their summary judgment motion are denied.

Dated: August 31, 2009
New York, New York

SO ORDERED:

WILLIAM H. PAULEY III
U.S.D.J.

-21-

*Counsel of Record:*

Gerard Patrick Norton, Esq.
Fox Rothschild LLP
100 Park Avenue, Suite 1500
New York, NY 10017
*Counsel for Plaintiffs*

Eric Weinstein, Esq.
Feldman Weinstein & Smith LLP
420 Lexington Avenue
New York, NY 10170
*Counsel for Defendants*